SCHOLFIELD (UNITED STATES v.). See Cases Nos. 16,230 and 16,231.

## Case No. 12,475a.

### SCHOLLENBERGER v. FORTY-FIVE FOREIGN INSURANCE COMPANIES.

[5 Wkly. Notes Cas. 405.]

Circuit Court, E. D. Pennsylvania. April 13, 1878.

COURTS — FEDERAL — FOREIGN CORPORATIONS — PROPER DISTRICT—WRITS—JURISDICTION—MANDAMUS.

1. The language of the act of congress of March 3, 1875 (18 Stat. 470), re-enacted from the judiciary act of 1789 (1 Stat. 79, § 11), that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceedings," etc., is complied with where the defendant is a foreign corporation doing business within the state in which the United States district is situated, and process has been served upon it through its local agent in said district, appointed under a state statute requiring the foreign corporation defendant to have such resident local agent before doing business in the state, on whom service of process for the company may be had.

2. A foreign corporation, for the purpose of service of original process upon it, may be "found within" the limits of another sovereignty than that in which it was incorporated.

3. A foreign corporation is "found within" another state when it transacts its ordinary business within the latter state, and has there a local agent on whom, by the state law, original process may be served.

4. Although state legislation cannot confer jurisdiction upon United States courts, and consent of parties cannot, yet both combined may. Thus, where a foreign corporation consents to the condition of a state law, viz. to be found within the state for the service of process, the fact that it is so found gives the jurisdiction. The proviso in the act of congress prescribing where a defendant may be sued is not one affecting the general jurisdiction of the federal courts. It is rather in the nature of a personal exemption in favor of a defendant which, if the citizenship of the parties is sufficient, he may waive.

5. A state law of Pennsylvania prescribed that foreign corporations doing business therein should submit themselves to service of process issuing out of "any court of this commonwealth having jurisdiction of the subject-matter." Held, that the circuit court of the United States in Pennsylvania, having jurisdiction of the subject-matter, was within the purview of the act.

6. Mandamus is the proper remedy where the United States circuit court refuses to entertain jurisdiction by quashing the service of the original process.

7. Semble, that, on a rule for a mandamus, the United States supreme court will only look at the petition and return, and not at the record

of the cases in the lower court referred to in the petition. La Fayette Ins. Co. v. French, 18 How. [59 U. S.] 407, and Railroad Co. v. Harris, 12 Wall. [79 U. S.] 81, approved and followed.

These were 45 actions of debt on policies of fire insurance, brought by William Schollenberger & Son, citizens of Pennsylvania, against the defendants, who were, respectively, corporations incorporated either by the parliament of Great Britain or by states other than Pennsylvania. Writs of summons, issued in this court, returnable to the first Monday of April, 1878, were duly served by the United States marshal for this district upon the person who, for the time then being, was, in each case, the agent of the respective defendant, and who had been, and was then, appointed by the said defendant as its agent, resident in Pennsylvania, under the acts of assembly of April 11, 1868, § 2 (P. L. 1868, p. 83; Purd. Dig. 796, pl. 29), and of April 4, 1873 (P. L. 1873, p. 27). Declarations were at the same time filed, in which the plaintiffs were described as citizens of the state of Pennsylvania, and each defendant as "a body corporate, created under the laws of [the proper state], and having its principal place of business in said state, and being a body corporate exercising, within the state of Pennsylvania, under a license granted by said state, their corporate rights, powers, and privileges, in the making of contracts of insurance, such as that on which this action is brought." The declarations showed that the contracts of insurance sued upon were in each case made in this district, insuring property situated here, between the plaintiffs and the respective defendants, acting by their local agents, who in each case were served. An appearance de bene esse was in each case entered for the agent, as an individual, upon whom service had been made, but not for the defendant corporation. Motions were thereupon made to quash the service of the writs in all the cases. The motion in one of the cases was, for special reasons, overruled. Schollenberger v. Phœnix Ins. Co. [Case No. 12,-476].

James H. Heverin and R. P. White, for the motions. (Their argument is fully stated in the opinion of McKENNAN, Circuit Judge, by whom it was substantially adopted.)

A. Sydney Biddle and Mr. McMurtrie, contra.

It is a general rule of jurisprudence that the defendant must be within the territorial jurisdiction of the sovereign from whose court the original process issues, in order that service may be made upon him. The defendant must have his day in court, and unless he has this, the judgment is void, except so far as the proceeding was in rem, and it is then good only to the extent of the res brought under the control of the judgment of the court by the original proceeding. Pennoyer v. Neff, 95 U. S. 714. If, then, a court entertains jurisdiction of a suit in personam where the defendant has

never been served, or has not voluntarily submitted to the jurisdiction, the judgment of the court is void, and will not be recognized by the court of another nation or state. Now, in the passage of the judiciary act of 1789, congress contemplated for each district a mode of service such as was then in use in the courts of the state in which the districts were respectively situated. But, in several of those states, consisting of more than one district, original process ran throughout the whole state. Moreover, as the United States was a nation, forming a single sovereignty, with national federal courts, process might, if congress had so willed it, run from one federal court throughout the national territory; and a defendant might be served in Massachusetts by a writ issuing from a United States court in California. The injustice of this was so obvious that it was deemed necessary to limit the otherwise existing jurisdiction, and confine the service of original process within the limits of the district from the court of which it issued. For this reason, it was declared, in that act, and the proviso has occurred in the succeeding acts, that "no civil suit should be brought before either of said courts against any person by original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceedings." 18 Stat. 470.

It is clear that this proviso was never intended to introduce a new condition essential to the jurisdiction of the United States courts, but that it was introduced in order to lessen the extent of the territory within which original process might, without the restriction, have run. The question, therefore, is whether a corporation can be an inhabitant of, or be found within, any other district than one of the state by which it was incorporated, for the purpose of being served with original process. The decisions in the state courts are applicable, inasmuch as no valid judgment in personam can be rendered unless the defendant was actually, or constructively by an agent, within the court's jurisdiction. Pennoyer v. Neff, supra. This was decided in La Fayette Ins. Co. v. French, 18 How. [59 U. S.] 407, in which it was held that jurisdiction was rightfully entertained by a United States court of a suit to enforce a judgment which had been obtained in a state court of Ohio against an Indiana insurance corporation doing business in Ohio by a local agent, as here. The service there was upon the local agent. The circuit court examined the question as to whether the state court had jurisdiction, and decided in the affirmative; and this, as we have seen, could not have been unless the defendant had been "found within" the jurisdiction. Harris v. Railroad Co., 12 Wall. [79 U. S.] 65, approved in Railroad Co. v. Whitton, 13 Wall. [80 U. S.] 285, and Knott v. Southern Life Ins. Co. [Case No. 7,894], are to the same effect. The same principle, i. e. that a foreign corporation could be "found within"

another country for the purpose of being served, was reached in Newby v. Colt's Patent Fire Arms Manuf'g Co., L. R. 7 Q. B. 293.

To the effect that the residence of a corporation for the service of process is not confined to the place of its principal office, see Cromwell v. Charleston Ins. & Trust Co., 2 Rich. 512; Baldwin v. Mississippi & M. R. Co., 5 Clarke (Iowa) 518; Richardson v. Burlington & M. R. Co., 8 Clarke (Iowa) 262; Bristol v. Chicago & A. R. Co., 15 Ill. 436; Libbey v. Hodgdon, 9 N. H. 394.

The circuit court of the United States for the Eastern district of Pennsylvania is a "court of this commonwealth," under the language of the act of assembly of April 4, 1873, supra. Newhall v. Atlantic F. & M. Ins. Co. [8 Phila. 106]; Com. v. Pittsburg & C. R. Co., 8 P. F. Smith [58 Pa. St.] 26.

Before McKENNAN, Circuit Judge, and CADWALADER, District Judge.

McKENNAN, Circuit Judge (orally). This question is one of considerable importance, and although it had already been decided in this court, yet, as we were not at that time aware of the decision of Judge Woods, in Knott v. Southern Life Ins. Co. [supra], who took an opposite view, we have allowed the matter to be argued. Corporations can have no existence outside of the limits of the sovereignty by which they were incorporated. They cannot migrate or pass beyond its boundaries. They can have no residence elsewhere, and hence can not inhabit or "be found within" the territory of another sovereignty. Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 588; Wheeler v. Railroad Co., 1 Black [66 U. S.] 287. Now, these corporations are all inhabitants of the states which created them. No corporation can, therefore, inhabit the territories of two different sovereignties at once. A corporation, for the purpose of suing and being sued, is no longer considered as being identical with its individual corporators or stockholders, inasmuch as it is now held that there is a presumption of law that the corporation is for those purposes a citizen of the state by which it was incorporated, even though a majority of the stockholders are citizens of another state. Railroad Co. v. Letson, 2 How. [43 U. S.] 497; Marshal v. Railroad Co., 16 How. [57 U. S.] 329; Railroad Co. v. Wheeler, 1 Black [66 U. S.] 297. Now, it is expressly required by the act of March 3, 1875 (18 Stat. 470), that the defendant of the United States court shall be an inhabitant of, or found within, the district in which he is sued at the time of serving the original process in the suit. How can this condition, essential to the jurisdiction, be said to have been complied with in the case of a foreign insurance corporation, if, as we have seen, it cannot exist outside of the territory of the state by which it was incorporated? These views are those which have been entertained in a number of similar cases cited by counsel, in which this very point has been raised. Pom-

croy v. New York & N. H. R. Co. [Case No. 11,261]; Leonard v. Lycoming Fire Ins. Co. [Id. 8,258], decided at Cleveland in the United States circuit court of Ohio; Day v. Newark India Rubber Manuf'g Co. [Id. 3,685]; Southern & A. Tel. Co. v. New Orleans, M. & T. R. Co. [Id. 13,185]; Abb. Prac. (3d Ed.) 34; and several cases cited in these. There is but one exception to this line of decisions. That is, Knott v. Southern Life Ins. Co. [supra]. But, on looking at that case, it appears to us clearly that the judge has been misled by misreading the case of Harris v. Railroad Co., supra, upon which the counsel for the plaintiffs chiefly relied. I confess, on first looking at that case, that I was somewhat staggered by it; but, on examining it more carefully, it does not appear to be in conflict with the views expressed by the circuit courts in a majority of the cases. That decision was expressly based upon a statute which was said to be local to the District of Columbia. No such statute exists, generally applicable to the United States circuit courts, whereby their jurisdiction has been enlarged, and this case is, therefore, a strong argument against the contention here made. The restriction as to inhabitancy, existing in the general statute, was removed by that local act, as regarded the District of Columbia. The English case cited is not applicable, inasmuch as the jurisdiction of the United States courts depends upon a statute requiring the condition to exist of the defendant's inhabitancy, or of his being found within the district, and not upon the principles of the common law, as does that of the English courts. The motions to quash are, therefore, granted. Orders accordingly.

Subsequently, on April 15, 1878, counsel for the plaintiffs presented in the supreme court of the United States, at Washington, a petition for a mandamus, setting forth the facts of the above case. Whereupon the said court awarded a rule, directed to the said judges of the Third circuit, commanding them to show cause why a writ of mandamus should not issue to them, directing them to proceed with the said causes, to reverse their orders quashing the service of the said writs, and to make such orders as ought to have been made if the service of the said writs had not been quashed (No. 7, original; October term, 1877).

The respondents filed the following return and note appended thereto: "Whereas, it was, on the 15th day of April, 1878, ordered by the said supreme court that the judges of the said circuit court show cause, etc.: Now, the judges of the said circuit court, in return to the said order, submitting to the supreme court the question whether the case is a proper one for the remedy by writ of mandamus, answer as follows: The facts in the said petition alleged are truly stated therein. The respondents have declined to hear and determine the said suits, because, in their opinion, the said circuit court has no competent jurisdiction

thereof, the several and respective defendants not having appeared therein, or in anywise, submitted to the jurisdiction of the court, and not having been, at the commencement of the respective suits, or at any time, 'inhabitants of or found in,' the said district, within the meaning of the act of congress of March 3, 1875; re-enacting a like provision of the 11th section of the act of September 24, 1789. The question under this enactment being one of jurisdiction, and not of mere procedure, the legislation of Pennsylvania, mentioned in the said petition, was, in the opinion of the respondents, inapplicable. The service of the process in the said suits was, therefore, set aside, as unauthorized. The reasons of the respondents are, in some respects more fully stated in a note hereto appended. Respectfully submitted."

### Note.

Normally, the seat of justice, when proceedings are in invitum, is the home of the defendant, or the place he may be served personally with process. "Actio sequitur reum." The exercise of original compulsory jurisdiction elsewhere, by local arrest of his property, or by what is called "substituted service" on his local agent, is, when allowed, an exceptional privilege of the creditor. But such a privilege may reasonably be allowed, in certain cases, in the exercise of internal jurisdiction, by the ordinary tribunals of a nation or state. Thus, the process of foreign attachment, limited to the property of nonresidents, which is actually within the territorial limits of the state or country, is not generally considered objectionable. It seems that, in England, the process in a suit against a foreign corporation, upon its contract made by its general local agent, may now be served on such agent. Laws of several of the states of our Union, including the act of Pennsylvania mentioned in the petition, authorize foreign corporations of certain kinds to transact business within the respective states on the condition of maintaining a local agency in such manner that process against the corporation may be served on the agent. The supreme court of the United States has considered such a condition reasonable and proper. La Fayette Ins. Co. v. French, 18 How. [59 U. S.] 404. On the same principle, congress, in legislating as to judicial proceedings in the District of Columbia, enacted, in 1867, that, in actions against foreign corporations doing business in that District, all process may be so served. 14 Stat. 404. This is one of the acts of congress which are called by the supreme court of the United States "local to the District." Railroad Co. v. Harris, 12 Wall. [79 U. S.] 65, on page 86. They do not constitute any part of what may properly be called the judicial system of the United States. Considerations, in many respects different, apply to questions of original jurisdiction, under the judicial system of the United States. As the system has been organized, original juris-

diction is apportioned according to a territorial division into districts, not one of which is composed of two states, or of parts of any two states. But the purposes of this territorial division do not require that as extended a system of internal jurisprudence, in all respects, shall be organized under the federal government within the limits of each state, as may exist under laws of the state.

Where the federal jurisdiction is exercisable, acts of congress indeed adopt, for the federal courts, the forms and modes of procedure in use in the several states. But these acts do not enlarge or define the original jurisdiction of the federal courts, or assimilate it to that of the state courts. The acts merely regulate the exercise of jurisdiction where it is already competent, as originally defined. In a case in which it was decided that state legislation could not limit or restrain the exercise of the judicial power of the United States under authority given by congress, the supreme court stated also, conversely, the proposition that "state legislation cannot confer jurisdiction upon the federal courts." Insurance Co. v. Morse, 20 Wall. [87 U. S.] 453.

The present question is wholly one of original jurisdiction. In organizing the judicial system under this head, congress has thought it necessary to exclude expressly any sanction, which might otherwise have been implied, of laws or usages of England, or of any state of the Union, enabling a plaintiff to transfer jurisdiction from the normal seat of justice to any other place where a defendant's property or a defendant's agent might happen to be. This was the purpose of the provision of the eleventh section of the act of 1789, that "no civil suit should be brought against any inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." In the absence of such precautionary express conclusion, it might have been material to inquire whether the acts of congress which adopt the laws of the several states, and the practice of the state courts, would apply to a case like the present, so as to sustain the jurisdiction. What was said in Picquet v. Swan [Case No. 11,134], and in Toland v. Sprague, 12 Pet. [37 U. S.] 300, 328, would then have required careful consideration. These cases, and Richmond v. Dreyfous [Case No. 11,799], apply to foreign attachments.

There are authorities more directly in point, which render the inquiry unnecessary. In Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 588, and in other cases, it is established that a corporation, although it may have power to make contracts and incur obligations in a foreign state, can have no legal existence out of the boundaries of the sovereignty by which it is created. "It must dwell in the place of its creation, and cannot migrate to another sovereignty." Therefore, a corporation created by one of the states of our Union cannot be "inhabitant" of another state in which it

transacts its business, though under an established and recognizable agency. Day v. Newark India Rubber Manuf'g Co. [supra], was the case of a foreign attachment against a corporation of another state. Nelson, J., said that, "in order to give jurisdiction to the circuit courts, the party defendant must be an inhabitant of the district in which the suit is brought, or he must be found within it at the time of the service of the original process; and this whether the suit be commenced by writ, summons, or attachment, or whatever may be the nature or character of the process used." Nelson, J., said, further, that, according to the true construction of the eleventh section of the act of 1789, the court would have no jurisdiction in suits instituted against foreign corporations, even in cases where the state practice, if adopted, would authorize the institution of such suits by the attachment of their goods, found within the jurisdiction.

Pomeroy v. New York & N. H. R. Co. [supra], cannot be distinguished from the present case. A law of New York, which gave certain privileges to a Connecticut corporation transacting business in New York, declared the corporation suable in the same manner as corporations created by the laws of New York, and that the process might be served on an officer or agent of the corporation. The corporation availed itself of the privileges, and submitted to the conditions. There was no doubt that it was suable in the courts of the state of New York. But it was decided that the circuit court of the United States for the Southern district of New York had no jurisdiction of a suit against the corporation in which the process had been served in the manner thus authorized by the act. There was a decision of like effect in Southern & A. Tel. Co. v. New Orleans, M. & T. R. Co. [supra], in the circuit court of the United States for the Southern district of Mississippi.

The re-enactment of the provision in question, in the same words, by the act of 1875 is not unimportant, because the decisions which have been cited had rendered the question familiar. It was a subject for the practical application of the rule that the construction of a statute forms a part of the statute. If there was any doubt of the correctness of the past interpretation, the form of the re-enactment would have been changed. This observation was made, since the re-enactment, by Judge Dillon, in a case decided by him in the same manner. Stillwell v. Empire Fire Ins. Co. [Case No. 13,449]. The strong leaning of that judge's mind was in a contrary direction, but he said that his decision was according to the view of the law generally accepted and acted upon, and that this was the third case, in seven years, in which it had been attempted in his circuit, by the service of original process on the agents of foreign corporations to acquire jurisdiction over the corporations themselves. In a note to the last-mentioned case the reporter cites a similar opinion of the circuit court for the Western

district of Missouri, in Dallmeyer v. Farmers', Merchants' & Manufacturers' Fire Ins. Co. [Id. 3,546]. The same point had been similarly decided by this court in an unreported case; and other cases to the same effect are noted in the briefs of counsel.

The only decision to the contrary which has been mentioned is that of Knott v. Southern Life Ins. Co. [supra]. The case appears to have been ruled upon a misconception of the decision in Railroad Co. v. Harris, 12 Wall. [79 U. S.] 65, already cited. By "an act concerning the District of Columbia" (passed on February 27, 1801), § 6, it was provided that no action should be brought before the circuit court of that District by any original process against any person who should not be an inhabitant of or found within said district at the time of serving the writ. 2 Stat. 106. This local enactment was in the same words as the provision of the eleventh section of the general judiciary act of 1789, which is now in question. So far as the local enactment could in any wise have been material to any present question, the provision was repealed by the local enactment of 1867 already cited. This enactment was, that in actions against foreign corporations doing business in the District of Columbia, all process may be served on the agent of such corporation, or person conducting its business aforesaid, or, in case he is absent and cannot be found, by leaving a copy thereof at the principal place of business in the District, and such service shall be effectual to bring the corporation before the court. 14 Stat. 404. That this was a repeal pro tanto there can be no doubt. But repeal pro tanto of what? Not of the provision of the eleventh section of the general judiciary act of 1789, which never was applicable to the District of Columbia at all, but of the similar provision of the local act of 1801. The supreme court said, expressly, that the jurisdiction of the court below was not governed by the eleventh section of the judiciary act of 1789, but by the acts of congress local to the District. This case, in 12 Wall. therefore, on which the present plaintiff chiefly relied, does not in any wise concern the present question favorably to his contention.

But the opinion of the court refers to the case of Bank of Augusta v. Earle in a manner unfavorable to the contention, as we understand the subject.

The case was heard in the supreme court April 30, 1878.

A. Sydney Biddle and Mr. McMurtrie, for the rule, presented the same arguments as before. They also argued that mandamus was the proper remedy, and not a writ of error, citing Toland v. Sprague, 12 Pet. [37 U. S.] 300, 331; Ex parte Russell, 13 Wall. [80 U. S.] 670; Railroad Co. v. Wiswall, 23 Wall. [90 U. S.] 507; Ex parte Smith, 94 U. S. 455. The judges of the circuit court, in distinguishing Railroad Co. v. Harris, supra, have evidently supposed that that case was decided on the local statute of 1867, printed in the report. But that act was not passed when that suit was brought, as appears by the report (pages 69, 74, 77).

Messrs. Heverin and White, contra, in addition to the arguments presented in the court below, argued that mandamus was not the proper remedy, citing High, Extr. Rem. § 173; Ex parte Flippin, 94 U. S. 350; Goheen v. Myers, 18 B. Mon. 427. The returns of the writs were defective, and would have been quashed in the state court.

FIELD, Circuit Justice. We cannot look at the records of these cases. Does not the petition aver that "the said writs were duly served" upon the proper parties? And does not the return state that "the said facts in the said petition alleged are truly stated therein"?

State legislation cannot confer jurisdiction upon the federal courts. Toland v. Sprague, 12 Pet. [37 U. S.] 323; Levy v. Fitzpatrick, 15 Pet. [40 U. S.] 171; Nazro v. Cragin [Case No. 10,062]; Main v. Second Nat. Bank [Id. 8,976]; Chittenden v. Darden [Id. 2,688]; Minot v. Philadelphia, W. & B. R. Co. [Id. 9,645]; Home Ins. Co. v. Morse, 20 Wall. [87 U. S.] 445.

May 10, 1878. [The writ of mandamus was granted, as prayed for. 96 U. S. 369.]